UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12-CR-00146 |
| VERSUS | * | JUDGE FOOTE |
| RICHARD JOSEPH BUSWELL | * | MAGISTRATE JUDGE HANNA |

GOVERNMENT'S RESPONSE TO DEFENSE
MOTION TO DISMISS COUNT 2 OF THE INDICTMENT
WITH INCORPORATED MEMORANDUM

NOW INTO COURT, comes the United States of America, through the undersigned Assistant United States Attorneys, who submit the following response to Defendant Richard Buswell's Motion to Dismiss Count 2 of the Superceding Indictment (Rec. Doc. 297)[1]:

**ISSUE**

Whether AM-2201 meets the definition of "drug" for the purpose of 21 U.S.C. § 321.

**FACTS**

AM-2201 was initially created by Alexandros Makriyannis at Northeastern University for use in researching the effects of cannabinoids on CB1 receptors. As the Court is well aware, based upon the declarations of expert witnesses, AM-2201 was and is an analogue to JWH-018, that in March of 2011 JWH-018 was regulated

---

[1] Defendants Alexander Derrick Reece, Daniel James Stanford and Barry L. Domingue have filed Motions to Adopt Defendant Buswell's Motion to Dismiss. (Rec. Docs. 312, 337 and 362 respectively)

1

as a controlled substance. The Synthetic Drug Abuse Prevention Act of 2012 made all naphthoyl banned substances. *See 21 U.S.C. § 812 (d)(2)(A)(ii)*. AM-2201 is a naphthoyl. Based upon chemical and pharmacological studies, the naphthoyls bind with the CB1 receptors causing euphoric and psychoactive effects in the same way THC, the psychoactive constituent of marijuana does. *See Consolidated Response to Stanford's and Domingue's Motions to Dismiss Indictment (Doc. 422 pp. 5-9 and attachments thereto)*

**LAW AND ARGUMENT**

    **Whether AM-2201 meets the definition of "drug" for the purpose of 21 U.S.C. § 321.**

    As is required by the pretrial scheduling order, every motion filed must be accompanied by a memorandum of law which cites the legal basis for the motion. Though Buswell in this motion to dismiss count 2 has submitted a memorandum in support of the motion to dismiss, he cites not a single case in support of the motion. Instead he makes baseless and irrelevant arguments that on their face do not support the motion to dismiss.[2]

    It is well settled that the word "drug" is a term of art that encompasses far more than the strict medical definition of the word. *U.S. v. Article of Drug. . . Bacto-Unidisk. . .* 394 U.S. 784, 793-4, 89 S.Ct. 1410, 1415-16, 22 L.Ed.2d 726 (1969). Though the use of the term "drug" in the original statute was more narrowly tailored, it has been expanded over time to include articles intended to affect the

---

[2] Example of the irrelevant baseless arguments made by the defense include: Government counsel referred to defendant Buswell as a drug dealer in a detention hearing; AM-2201 is a synthetic cannabinoid and the government praises the medical benefits of synthetic cannabinoids; and, AM-2201 was not an analogue of JWH-18 and as a result it can be neither an illicit substance nor a synthetic drug.

2

structure or any function of the body of man or other animals. In *Article of Drug. . . Bacto-Unidisk. . .,* the Supreme Court found that a disk that was placed in contact with a culture of a patient's virus, to determine if an antibiotic would be effective defeating said virus, was a drug for the purpose of FDA regulations. The patient never ingested the disk, or even came in contact with the disk. The disk was simply impregnated with the antibiotic and the virus was then placed on the disk, to see if it would grow. *Id.* at 787-88.  Even with that, the Court found that the item fell within the definition of '"drug". *Id* at 799-800.

It is without contradiction that AM-2201 is intended to affect a function of the body of man or other animals. In every report submitted, AM-2201 binds to the CB1 receptors. Those receptors mediate the euphoric and psychoactive effects of THC. Those receptors are found abundantly in the central nervous system. The defense argues, in other motions, that the government cannot prove that AM-2201 has the same pharmachological effects as JWH-018. No one argues that AM-2201 has no effect on a function of the body. Based upon the opinions of all experts, it does. To even argue the point strains logic and reason. The "Mr. Miyagi" was sold because it had the same or a similar effect on the body as marijuana and other cannabinoids. That fact is uncontradicted. As such it falls within the broad definition of "drug" as defined by both the statute and the United States Supreme Court.

In addressing the issue whether non-traditional drugs would fall within the gambit of "drugs" for the purpose of 21 U.S.C. § 321(g)(1), the Court in *United*

*States v. Storage Spaces Designated Nos. "8" and "49". . .et.al.* 777 F.2d 1363, 1366 (9th Cir. 1985) held:

> The term "drug" includes "articles (other than food) intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(g)(1)(C) (1982).[FN4] The vendor's intent is the key element in this statutory definition. *Cf. National Nutritional Foods Ass'n v. Mathews,* 557 F.2d 325, 333 (2d Cir.1977). This intent may be derived or inferred from labeling, promotional material, advertising, or any other relevant source.

In *Storage Spaces Designated Nos. "8" and "49". . .et.al.* the Court was faced with defendants selling a substance described as a substitute for cocaine. The Court in ruling that the material was a "drug" for the purpose of 321(g)(1), found that it was clear from the packaging that the defendant was promoting the products to be cocaine substitute. The fact that the defendant had created catalogs and advertisements selling the material as incense, even though the evidence was that the defendant intended that the material be ingested, causing the same effects as cocaine, demonstrated he intended to misbrand the drug. *Id* at 1367. The Court also noted that pursuant to FDA regulations, all drugs must have adequate directions for use. In the case of the synthetic cocaine, being sold as incense, there were no directions for use at all on the packaging regarding how to use them as a drug. *Id. See also, United States v undetermined quantities of articles of drug, and street drug alternatives. . . et al.,* 145 F.Supp.2d 692 (D. Md 2001); *United States v Travia,* 180 F.Supp. 2d 115 (D.C. 2001).

As will be demonstrated at trial, "Mr. Miyagi" was labeled as incense. There was no doubt, in direct contradiction to that label, the material was marketed as a

4

synthetic marijuana substitute. As such, it was a drug for the purpose of 321(g)(1). By selling "Mr. Miyagi" labeled as incense, the defendant were selling misbranded drugs.

WHEREFORE the United States prays that this Honorable Court deny the defense Motion to Dismiss Count 2 of the Superceding Indictment.

Respectfully submitted,

STEPHANIE A. FINLEY
United States Attorney

s/J.  Collin Sims
J.  COLLIN SIMS, Bar No.  30727
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

s/John Luke Walker
JOHN LUKE WALKER, Bar No. 18077
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

CERTIFICATE

I hereby certify that on April 24, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

s/John Luke Walker
JOHN LUKE WALKER
Assistant United States Attorney