UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA  CRIMINAL NO. 6:12-CR-00146-01,
             06, 07, 08, 09, 10

VERSUS        JUDGE FOOTE

ALEXANDER DERRICK REECE (01)  MAGISTRATE JUDGE HANNA
DREW T. GREEN (02)
THOMAS WILLIAM MALONE, JR. (03)
BOYD ANTHONY BARROW (04)
JOSHUA ESPINOZA (05)
CURIOUS GOODS LLC (06)
RICHARD JOSEPH BUSWELL (07)
DANIEL JAMES STANFORD (08)
DANIEL PAUL FRANCIS (09)
BARRY L. DOMINGUE (10)


# REPORT AND RECOMMENDATION
# ON MOTION TO DISMISS

## (Rec. Doc. 294)


Before the court on referral from the district court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Cr. P. 59(b)(1) is defendant Buswell's motion to dismiss the money laundering counts of the superseding indictment. (Rec. Doc. 294). The motion was adopted by defendants Reece (Rec. Doc. 311, 332), Curious Goods (Rec. Doc. 320, 332), Stanford (Rec. Doc. 341, 346), and Domingue (Rec. Doc. 358, 379). The motion is opposed by the

government. (Rec. Doc. 409). Oral argument was held before the undersigned on April 26 and May 2, 2013. Considering the evidence, the briefs, the arguments of counsel, and the applicable law, it is recommended that the motion be DENIED.

## FACTUAL BACKGROUND

The superceding indictment (Rec. Doc. 58)[1] charges the defendants with sixteen substantive counts and also contains a forfeiture allegation. At issue in this motion are Counts 3-16 which include one count for money laundering conspiracy under 18 U.S.C. §1956(h) and thirteen counts of money laundering in violation of 18 U.S.C. §1957.

The indictment alleges that, as of March 2011, the synthetic cannabinoid JWH-018 was a schedule I controlled substance. The other synthetic cannabinoids identified in the indictment are allegedly analogues of JWH-018 and include AM-2201, JWH-081, JWH-250, and UR-144.[2] After JWH-018 was added to schedule I, bulk quantities of synthetic cannabinoids were allegedly supplied by defendant Reece

---

[1] Although a motion was filed seeking to revise the language used in the superseding indictment, all references to the indictment in this ruling are to the superseding indictment filed into the record on September 4, 2012 with signatures (Rec. Doc. 58).

[2] By separate report and recommendation, the undersigned recommended, without opposition from the government, that JWH-081, JWH-250, and UR-144 be stricken from the indictment. (Rec. Doc. 486) Therefore, discussion will center on AM-2201.

to a business known as NeutraGenomics which was owned and operated by defendants Green and Malone. NeutraGenomics supplied synthetic cannabinoids to Pinnacle Products Group, which was controlled by defendants Barrow and Espinoza, to be infused into a product called Mr. Miyagi. Pinnacle manufactured Mr. Miyagi and acted as the exclusive supplier of Mr. Miyagi to Curious Goods. Curious Goods, which was controlled by defendant Buswell, sold Mr. Miyagi to the public who would ingest it, typically by smoking it, in order to achieve a high. Mr. Miyagi contained the synthetic cannabinoid AM-2201. Defendants Stanford and Domingue allegedly received funds in excess of $245,000 from Pinnacle and Curious Goods derived from the sale of Mr. Miyagi.

In count one, the defendants are charged under 21 U.S.C. §846 with conspiracy to violate 21 U.S.C. §841(a)(1), which prohibits the knowing or intentional manufacture, distribution, or dispensing of a controlled substance as well as the possession with intent to manufacture, distribute, or dispense a controlled substance. Through the application of 21 U.S.C. §813, commonly called the analogue statute, the prohibitions of §841(a)(1) are extended to the analogues of controlled substances listed in Schedule I of the Controlled Substances Act. (21 U.S.C. §801 *et seq*.) It is alleged that JWH-018 became a Schedule I controlled substance as of March 2011

and AM-2201 is alleged to be a controlled substance analogue, as defined in 21 U.S.C. §802(32)(A), of JWH-018.

The indictment alleges that a controlled substance analogue resembles a controlled substance in chemical structure and actual or intended physiological effect, paraphrasing the language from the definition found at 21 U.S.C. §802(32)(A). The indictment also alleges that "a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purpose[s] of any federal law, as a controlled substance in Schedule I" tracking the language of 21 U.S.C. §813.

Count two of the indictment alleges that the defendants conspired to introduce misbranded drugs into interstate commerce by packaging Mr. Miyagi in a manner that violated the Federal Food, Drug and Cosmetic Act. (21 U.S.C. §321 *et seq*.) Count two also alleges that defendants Stanford and Francis, who had formed an entity known as the Retail Compliance Association (RCA), trained, advised, and instructed franchise owners of defendant Curious Goods LLC and their employees on how to store, display, and sell Mr. Miyagi products, how to detect and evade law enforcement, and how to respond to their customers' questions about Mr. Miyagi. The franchise owners were allegedly required to join the RCA and pay dues which were determined by the sales volume of each store.

Count three alleges that these co-conspirators, along with defendant Domingue, conducted financial transactions using proceeds from the sale of Mr. Miyagi, in violation of 18 U.S.C. §1956(h). Counts four through sixteen allege various instances of money laundering by defendants Barrow, Espinoza, Stanford, Buswell, and Domingue in violation of 18 U.S.C. §1957.

In this motion, defendants Buswell, Reece, Curious Goods, Stanford, and Domingue seek dismissal of the money laundering counts arguing that the money laundering counts fail to properly charge them with a crime.

## ANALYSIS

### A.  THE STANDARD FOR ANALYZING A MOTION TO DISMISS AN INDICTMENT

Rule 12(b)(2) and Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure supply the procedural means for a criminal defendant to challenge the sufficiency of an indictment.  Under Rule 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."

To be constitutionally sufficient, an indictment must enumerate each element of the charged offense, fairly inform the defendant of the charges filed against him,

and provide the defendant with a double jeopardy defense against future prosecution.[3] Fed.R.Cr.P. 7(c) is essentially the same. It requires an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged, and to cite the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that he committed each element of the offenses.[4] An indictment setting forth the offense in the words of the statute itself is generally sufficient to satisfy these requirements.[5] An indictment that meets minimal constitutional standards is sufficient to warrant a trial of the charges on the merits.[6]

The appropriateness of granting a motion to dismiss an indictment by pretrial motion is largely contingent upon whether the alleged infirmity is essentially one of law or involves determinations of fact.[7] "If a question of law is involved, then

---

[3] *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir.1996); *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir.1994); and *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991).

[4] *United States v. Guzman–Ocampo*, 236 F.3d 233, 235 (5th Cir. 2000).

[5] *United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991); *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986).

[6] See *Costello v. United States*, 350 U.S. 359, 363 (1956).

[7] *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), citing *United States v. Miller*, 491 F.2d 638, 647 (5th Cir.1974).

consideration of the motion is generally proper."[8]   Therefore, a district court may

dismiss an indictment based on the resolution of a legal question in the presence of

undisputed facts.[9]

With regard to factual questions, "a district court may make preliminary

findings of fact necessary to decide the questions of law presented by pre-trial

motions so long as the court's findings on the motion do not invade the province of

the ultimate finder of fact."[10]  Consistently,"[a]s a motion to dismiss an indictment for

failure to state a claim is a challenge to the sufficiency of the indictment, we are

required to take the allegations of the indictment as true and to determine whether an

offense has been stated."[11]   Thus,"[a] defendant may not properly challenge an

indictment, sufficient on its face, on the ground that the allegations are not supported

by adequate evidence, for an indictment returned by a legally constituted and

unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on

the merits."[12]   This court lacks authority under Fed.R.Cr.P. 12 to dismiss an

---

[8]        *United States v. Flores*, 404 F.3d at 324.

[9]        *United States v. Flores*, 404 F.3d at 325.

[10]        *United States v. Flores*, 404 F.3d at 324, n. 6.

[11]        *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

[12]        *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975).

indictment on the basis of a "sufficiency-of-the-evidence defense, which raises factual questions embraced in the general issue."[13]

When a defendant challenges an indictment on the basis that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated.[14] The question is not whether the allegations set forth in the indictment are in fact true but whether the indictment sufficiently charges an offense.[15] This is so because the basic purpose of an indictment is to fairly inform the defendant of the charges against him.[16] Quite simply, "the government is not required to prove its case in the indictment."[17] An indictment need not set forth every evidentiary detail necessary to establish the elements of the offense since, at this early stage of a criminal proceeding, the government is not required to set forth in detail all of the factual evidence by which

---

[13] *United States v. Mann*, 517 F.2d at 268.

[14] *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999); *United States v. Kay*, 359 F.3d at 742.

[15] *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

[16] *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986).

[17] *United States v. Alfortish*, No. 10-328, 2011 WL 2293136, at *2 (E.D. La. June 8, 2011).

it plans to establish a defendant's guilt at trial.[18]  As the Fifth Circuit has explained, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."[19]

## B.  THE SUPERSEDING INDICTMENT IS CONSTITUTIONALLY SUFFICIENT

The moving defendants contend that the money laundering counts of the indictment fail to properly charge them with a crime for three reasons.  First, they contend that if AM-2201 is not a controlled substance analogue, there was no crime.  Second, they contend that the indictment does not sufficiently allege that these defendants knew that the Mr. Miyagi products sold by Curious Goods contained a controlled substance analogue.  Third, they contend that all of the money paid to Stanford by Curious Goods was a part of the legal fee paid for Buswell's legal defense in an unrelated securities fraud case, and therefore, excepted from the statutory definition of "monetary transaction" pursuant to the "safe harbor provision" of 18 U.S.C. §1957(f).  The defendants do not specifically argue that the indictment is constitutionally insufficient.  Instead, the challenge is primarily directed to the government's factual basis for alleging these particular counts.

---

[18]      *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir.1986); *United States v. Cauble*, 706 F.2d 1322, 1334 (5th Cir. 1983).

[19]      *United States v. Webb*, 747 F.2d 278, 284 (5th Cir.1984).

The government opposes the defendants' motion, arguing that factual disputes cannot be resolved by means of a motion to dismiss the indictment and also arguing that the "safe harbor provision" of 18 U.S.C. § 1957(f) is an affirmative defense that cannot preclude the defendants from being charged under the indictment.

1.    **WHETHER AM-2201 IS A CONTROLLED SUBSTANCE ANALOGUE IS A FACTUAL ISSUE THAT CANNOT BE RESOLVED WITH THIS MOTION**

The defendants argue that if AM-2201 is not a controlled substance analogue, then the indictment does not charge them with a crime. The indictment alleges in count three that AM-2201 is a controlled substance analogue as defined in 21 U.S.C. §802(32)(A). (Rec. Doc. 58 at 11). Whether AM-2201 actually is a controlled substance analogue is a question of fact that must be assumed as true for purposes of this motion and left to the jury to determine at trial on the merits.[20]

---

[20]    *United States v. Bamberg*, 478 F.3d 934, 939 (8th Cir. 2007) ("the jury was required to find. . . [that] 1,4 BD is a controlled substance analogue. . . ."); *United States v. Brown*, 415 F.3d 1257, 1264 (11th Cir. 2005) ("In its role as factfinder, the district court concluded that the government had proven beyond a reasonable doubt that the chemical structure of 1,4-butanediol is substantially similar to that of GHB and, accordingly, 1,4-butanediol is a controlled substance analogue of GHB. . . . On that basis, the court found the Browns guilty of conspiracy to distribute a controlled substance analogue for human consumption.")*; United States v. Klecker*, 348 F.3d 69, 72 (4th Cir. 2003) ("Whether a particular substance qualifies as a controlled substance analogue is a question of fact.); *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002) (same); *United States v. Sullivan*, No. 4:11CR3034, 2011 WL 3957425, at *2 (D.Neb. Aug. 17, 2011) ("Whether the chemical structures of these substances are "substantially similar to the chemical structure" of a schedule I or II controlled substance is an issue of fact to be resolved at trial. Similarly, a jury must decide whether [the substances] have, or were represented by the defendant to have, a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to or greater than a schedule I or II controlled substance. Finally, based on the evidence at trial, the jury must decide if Sullivan intended to sell bath salts as drugs for human consumption. . . ."); *United States*

**2.** **WHETHER THE DEFENDANTS KNEW THAT THE MR. MIYAGI PRODUCTS SOLD BY CURIOUS GOODS CONTAINED A CONTROLLED SUBSTANCE ANALOGUE IS A FACTUAL ISSUE THAT CANNOT BE RESOLVED WITH THIS MOTION**

The allegations in count three, the conspiracy count, are that the defendants' knowingly conducted or attempted to conduct financial transactions which involved proceeds of "specified unlawful activity, to wit: the distribution of a mixture of and substance containing a detectable amount of AM-2201, . . .[a] Schedule I controlled substance analogue as defined in 21 U.S.C. §802(32)(A), knowing that the substance was intended for human consumption as provided in 21 U.S.C. §813 with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18 United States Code, Sections 1956(a)(1)(A)(i). " (Rec. Doc. 58, at 11). "Specified unlawful activity" is defined to include dealing in controlled substances. 18 U.S.C. §1956(c)(7)(A).

---

*v. Lusk*, No. A05-052CRJWSJDR, 2005 WL 2704988, *1 at n.1 (D. Alaska Oct. 5, 2005) ("whether the chemical. . . was in fact a controlled substance analogue. . . raises a factual issue for the fact finder at trial."); *United States v. Niemoeller*, No. IP 02-09-CR-1 H/F, 2003 WL 1563863, at *5 (S.D. Ind. Jan. 24, 2003) ("The government will still be required to prove the elements here [including whether 1,4-butanediol is an analogue of GHB] beyond a reasonable doubt, if it can."); *United States v. Forbes*, 806 F.Supp. 232, 238 (D. Colo. 1992) ("Of course, whether AET is a controlled substance analogue would ultimately be a question for the trier of fact."); *United States v. Klecker*, 348 F.3d 69, 72 (4th Cir. 2003); *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002); *United States v. Lusk*, No. A05-052CRJWSJDR, 2005 WL 2704988, *1 at n.1 (D. Alaska Oct. 5, 2005) ("whether the chemical. . . was in fact a controlled substance analogue. . . raises a factual issue for the fact finder at trial.").

The indictment further alleges that Mr. Miyagi was infused with AM-2201, sold to Curious Goods and that proceeds from the sale of Mr. Miyagi were the subject of various financial transactions including the purchase of additional quantities of AM-2201 and Mr. Miyagi. (Rec. Doc. 58, at 12) These allegations indicate knowledge on the part of the defendants is an essential element of the crime charged. It has been sufficiently pled to place the defendants on notice of the crime charged, and whether they did or did not have knowledge of Mr. Miyagi containing a controlled substance is a matter for the jury to decide.

Count three also contains allegations of violations under 18 U.S.C. §1957(a). Specifically, the defendants "knowingly engaged or attempted to engage in monetary transactions . . . in criminally derived property. . .that was derived from specified unlawful activity, to wit: the distribution of a mixture of and substance containing a detectable amount of AM-2201, . . .[a] Schedule I controlled substance analogue as defined in 21 U.S.C. §802(32)(A), knowing that the substance was intended for human consumption as provided in 21 U.S.C. §813 in violation of Title 18 United States Code, Section 1957(a)."

Under this statute, the government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity. 21 U.S.C. §1957(c)  However, in count three and in all the money

laundering counts brought under §1957, the allegation is made that the property at issue was derived from the "sale of a controlled substance analogue, a Schedule I controlled dangerous substance." (Rec. Doc. 58 at 13-21)

As the indictment accurately states, §813 requires that, in order for a controlled substance analogue to be treated as a controlled substance in schedule I, it must be "intended for human consumption." Therefore, while possibly not necessary to these counts, the defendants' knowledge concerning the content of the Mr. Miyagi products sold by Curious Goods is relevant to the issue of whether AM-2201 is a controlled substance analogue and is a factual question which must be assumed as true for purposes of this motion and left for resolution by the jury at the trial on the merits.

3.  **WHETHER THE SAFE HARBOR PROVISIONS OF SECTION 1957(F) ARE APPLICABLE OR REQUIRED TO BE AFFIRMATIVELY NEGATED IN THE INDICTMENT**

The defendants contend that the money Curious Goods paid to Stanford was payment for legal services he provided to Buswell in an unrelated matter, thus triggering the safe harbor provision of 18 U.S.C. §1957(f).[21] Subparagraph (1) of the

---

[21] See *United States v. Buswell* 11-cr-198-01. This aspect of the motion, although pragmatically not adopted by Reece as he is not a lawyer, is conceivably adopted by Domingue who is a lawyer and who appeared on behalf of defendant Buswell in 11-cr-198-01 at a revocation hearing held on December 12, 2011 at which it was represented that Domingue "signed on" as a lawyer in that case and was the "corporate lawyer" for Curious Goods. See 11-cr-198-01, Rec. Doc. 51, p. 3. It is noteworthy, however, that Buswell does not mention Domingue in his briefing on this issue.

statute defines "monetary transaction" to "not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." Contrary to what is raised in brief, at issue in this motion is not whether Buswell/Stanford/Domingue are entitled to the protections of the safe harbor provision. To whom the money was paid, by whom the money was paid, why the money was paid and the source of the money are all factual questions that are in dispute.

The indictment alleges that the defendants knowingly engaged and attempted to engage in monetary transactions in criminally derived property having a value greater than $10,000 involving property that was derived from specified unlawful activity. (Rec. Doc. 58 at 13-21). The indictment alleges in count four that a check in the amount of $12,500, bearing check number 2091, drawn on the account of Pinnacle Products, L.L.C., signed by defendant Barrow, was deposited into defendant Stanford's personal savings account, the funds having been derived from the sale of a controlled substance analogue. (Rec. Doc. 58 at 13) The indictment also alleges that a check drawn on the account of Pinnacle Products, in the amount of $20,000, bearing check number 2506, made payable to defendant Domingue and signed by defendant Barrow was deposited into Domingue's bank account, the funds having been derived from the sale of a controlled substance analogue. (Rec. Doc. 58 at 14).

Neither of these allegations reference Buswell at all and both must be accepted as true.

The indictment contains several other similar allegations some of which include Buswell as the person who signed the checks drawn on Curious Goods account and some of which do not. All of them must be accepted as true. Even with regard to the checks drawn on Curious Goods' account and signed by Buswell, since Curious Goods is not, and never was, a defendant in the securities fraud litigation in which Stanford represented Buswell, whether the defendants are entitled to the protection of the safe harbor provided by 18 U.S.C. §1957(f) is an issue that cannot be resolved at this time because it rests on disputed facts.

However, there is no allegation in the indictment that the payments made to Stanford or Domingue were not necessary to protect Buswell's sixth amendment rights. It is clear that while the government has the burden of proving, at trial, each of the elements of the offense charged, it does not have the burden of proving the nonexistence of any affirmative defenses that the defendants may present in response to its evidence. "Proof of the nonexistence of all affirmative defenses has never been constitutionally required."[22] Similarly, as it pertains to pleading in an indictment, the Supreme Court in *McKelvey v. United States*, 260 U.S. 353, 357(1922) stated:

---

[22]    *Patterson v. New York*, 432 U.S. 197, 210 (1977).

an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere and. . . it is incumbent upon one who relies on such an exception to set it up and establish it.[23]

Therefore, the issue more appropriately framed is whether the indictment is deficient for not including the inapplicability of the safe harbor provision in the allegations of the indictment as an element of the offense, or if the exception is an affirmative defense which may be excluded.

The safe harbor exception was added to the definition in 1988, two years after the statute was enacted. Pub. L. 100-690, §6182, 102 Stat. 4181,4354 (1988). It was scrutinized by the seventh circuit in *United States v. Hoogenboom*, 209 F.3d 665 (7th Cir. 2000), albeit in a post-conviction, sufficiency of the evidence context, which concluded:

> Correctly read, the statute offers a **defense** where a defendant engages in a transaction underlying a money laundering charge with the present intent of exercising Sixth Amendment rights. This allows a defendant to preserve her rights without undermining the prosecution of those the statute seeks to punish.

*Hoogenboom* 209 F.3d at 669(emphasis added)[24]

---

[23]     See also *United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972).

[24]     See also  *United States v. Kloess*, 251 F.3d 941, 948 (11th Cir. 2001) reaching the same conclusion with regard to the safe harbor provision of 18 U.S.C. §1515(c) applicable to obstruction of justice charges.

A district court in Florida specifically undertook the same analysis that is before this Court in the context of a motion to dismiss and ultimately concluded the exception was an affirmative defense which could not be properly brought at the pretrial motion to dismiss stage.[25]  This Court agrees with the reasoning employed by the Florida court:

> From the face of §1957, it is not obvious whether Congress intended § 1957(f)'s exception to be an element of the offense or an affirmative defense. On the one hand, reading §1957(f) naturally, the exception appears to be part of the statutory definition of prohibited "monetary transactions," which would support the exception being an element of the money laundering crime. . . .On the other hand, weighing heavily in favor of construing the exception as an affirmative defense is the process by which the exception was adopted. The exception was added to the statute two years after its enactment, in order to prevent criminalizing the legitimate dealings of defense attorneys with drug dealing clients. . . . Through the exception Congress created a safe harbor for legitimate criminal defense expenses; it did not alter the substantive elements of money laundering under §1957. . . Moreover, construing the exception as an element of the offense would allow the exception (i.e., knowingly accepting criminal proceeds for bona fide criminal defense work does not violate §1957) to swallow the rule (i.e., knowingly accepting criminal proceeds violates §1957). This could not have been Congress's intent. Thus, the appropriate construction of § 1957(f)'s exception is that it is an affirmative defense to the money laundering offense, which Defendant must prove, at trial, by a preponderance of the evidence.[26]

---

[25]     *United States v. Ferguson*, 142 F.Supp.2d 1350, 1356-1360 (S.D.Fla. 2000).

[26]     *United States v. Ferguson*, 142 F.Supp.2d at 1359.

This analysis is consistent with that of the eleventh circuit in *United States v. Kloess* 251 F.3d 941, 944 (11th Cir 2001) which undertook a three part inquiry to determine if the similar safe harbor exception found at 18 U.S.C. §1515(c) pertaining to liability for obstruction of justice where bona fide legal services were at issue:

> To determine whether a statutorily created exception to a criminal offense is an element of the crime, we undertake a three-part inquiry. *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir.1997). First, we look at the language and structure of the statute itself to determine whether the exception is part of the general statutory offense. Second, we look at the legislative history of the statute to determine whether Congress intended to make the exception an element of the crime. Finally, we look to see whether the government is well-situated to adduce evidence tending to prove the applicability of the exception. *Id*. If the answers to these three questions are "yes," then the exception is an element of the offense.

Applying these three inquiries to the §1957(f), it cannot be said that all three can be answered in the affirmative. The *Ferguson* court aptly concluded Congress did not intend to make the exception an element of the crime. With regard to the third inquiry the *Kloess* court pointed out, the government in this case would not necessarily have access to an attorney's billing records and other information which might be privileged to present to a grand jury. On the other hand, as it applies to the defendants in this case, if there is such information that would be exculpatory, they have the ability to waive the attorney-client privilege. Therefore, if the defendants

come forward with sufficient evidence that the exception applies, then it is incumbent upon the government to rebut that evidence.

This Court concludes the safe harbor provision of §1957(f) is an affirmative defense, and as such it need not be negated by the government in the indictment,

**4.      THE INDICTMENT IS CONSTITUTIONALLY SUFFICIENT**

In this case, the indictment does not directly quote the language of the money laundering statutes under which the moving defendants are charged, 18 U.S.C. §§ 1956 and 1957, but it expressly cites those specific statutes as the ones allegedly violated and sufficiently sets forth the elements that must be proved to establish a violation of those statutes.  With regard to §1956, the indictment alleges, in Count 3, that the defendants knowingly conducted or attempted to conduct financial transactions involving the proceeds of specified unlawful activity with the intent to promote the carrying on of that activity, which is described in the indictment as "the distribution of a mixture and substance containing a detectable amount of AM-2201. . . ., controlled substance analogue[]. . ., knowing that the substance was intended for human consumption."   The undersigned finds that this sufficiently placed the defendants on notice of the crime that they are being charged with violating.

With regard to §1957, the indictment alleges, in Count 3,  that the defendants knowingly engaged in or attempted to engage in monetary transactions in criminally

derived property having a value greater than $10,000 that was derived from specified unlawful activity. The indictment then again describes that activity as "distribution of a mixture and substance containing a detectable amount of AM-2201. . ., Schedule I controlled substance analogue[]. . . knowing that the substance was intended for human consumption. . . ." The undersigned again finds that this sufficiently placed the defendants on notice of the crime that they are being charged with violating.

Each of the subsequent money laundering counts of the indictment – Counts 4 through 16 – also sets forth a citation to the statute that the defendants are charged with violating and recites the elements of the charged crime with sufficient particularity to place the defendants on notice of the crimes that they are being charged with violating.

Under the standard that must be applied in resolving this Rule 12 motion, the Court is required to accept as true the factual allegations set forth in the superseding indictment. Therefore, the court must accept that AM-2201 is a controlled substance analogue, that the defendants engaged in monetary transactions involving criminally-derived property, and the defendants knew that the Mr. Miyagi products sold by Curious Goods contained a controlled substance analogue. Although the defendants suggest that these are preliminary factual issues that can be decided before trial, these actually are significant factual issues that must be established in order for the

government to prove the elements of its case. Accordingly, these factual issues must be decided by the jury at trial on the merits.

C<small>ONCLUSION</small>

The undersigned concludes that Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of the superseding indictment – the conspiracy and money laundering counts that the moving defendants seek to have dismissed in the motion currently under consideration – contain the elements of the charged offenses, fairly inform the moving defendants of the charges against them, and ensure that there is no risk of future prosecutions of these defendants for these same offenses. This Court concludes the safe harbor provision under §1957(f) is an affirmative defense, the applicability of which the defendants will bear the burden to demonstrate at trial, and therefore, need not be negated by the government in the indictment. Accordingly, the undersigned recommends that the motion to dismiss the conspiracy and money laundering counts of the superseding indictment, which was filed by defendant Buswell (Rec. Doc. 294) and adopted by defendants Reece (Rec. Docs. 311, 332), Curious Goods (Rec. Docs. 320, 332), Stanford (Rec. Docs. 341, 346), and Domingue (Rec. Docs. 358, 379) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b)(2), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed. R. Cr. P. 59(b)(2).

Signed at Lafayette, Louisiana on this 13th day of May, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE