UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 12-CR-00146 (01) |
| VERSUS | JUDGE FOOTE |
| ALEXANDER DERRICK REECE - 01 | MAGISTRATE JUDGE HANNA |
| DREW T. GREEN - 02 | |
| THOMAS WILLIAM MALONE, JR. - 03 | |
| BOYD ANTHONY BARROW - 04 | |
| JOSHUA ESPINOZA - 05 | |
| CURIOUS GOODS LLC - 06 | |
| RICHARD JOSEPH BUSWELL - 07 | |
| DANIEL JAMES STANFORD - 08 | |
| DANIEL PAUL FRANCIS - 09 | |
| BARRY L. DOMINGUE - 10 | |

**DEFENDANT REECE'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO *UNITED STATES V. JAMES***

COMES NOW, the Defendant, Alexander D. Reece, by and through undersigned counsel, and respectfully submits this Reply Memorandum in Support of his Motion for Hearing Pursuant to *United States v. James* (Doc. 285) and in response to the United States' Response in Opposition to Reece's Motion for a Hearing to Determine the Admissibility of Co-Conspirators' Statements (Doc. 404).

As the Court is aware, this is an extremely complex case involving tens of thousands of discovery documents, numerous recordings, multitudes of legal and factual issues, and several defendants. The defendants set for trial range from practicing attorneys and retailers in the Lafayette, Louisiana area, to Mr. Reece, an independent Florida resident with business offices in Gainesville, Florida. As previously noted, Mr. Reece had never been to Lafayette prior to attending his own arraignment in this case.

The government offers several arguments in its Response to the Defendant's motion for

pre-trial hearing regarding the admissibility of co-conspirator hearsay as to why no *James* hearing is required. In part II of its Response, the government outlines its factual differences with the facts alleged by the defense, which we contend demonstrate there was no conspiracy between Mr. Reece and any of the other alleged co-conspirators. In Part III of its Response, the government contends that there is no need for a *James* hearing, and that any such hearing would "unnecessarily waste time and resources." With all due respect to government counsel, their arguments miss the mark.

The position of the defense is that since it is highly debatable whether any conspiracy existed involving the Defendant and the alleged co-conspirators, it is overly prejudicial to Mr. Reece to permit the government to offer hearsay statements of alleged co-conspirators against him unless and until the alleged conspiracy is established as required by law and the Federal Rules of Evidence. Toward this end, counsel for Mr. Reece requested a hearing, pursuant to *United States v. James*, 560 F.2d 575 (5th Cir. 1979), wherein the government would have to establish, pre-trial, the existence of a conspiracy, Mr. Reece's membership therein, and other requisites of Rule 801(d)(2)(E) before any co-conspirator hearsay could be admitted against Mr. Reece. Under the circumstances, rather than being an unnecessary waste of time, it is respectfully submitted that an independent *James* hearing would actually save valuable time and resources of this Court, reducing unnecessary testimony, objections, side bar conferences, and overall interruption to the government's case. The differences between the facts alleged by the defense and government in the pleadings exchanged on this issue make it clear that there are true factual differences of opinion between the government and defense as to what the facts of this case are. To accept the government's opinion of the facts at this stage, as alleged in its Response, before hearing any evidence, opens the door to the receipt of unreliable hearsay that, upon later

consideration of all evidence, the Court could well decide should not have been received, thereby most likely precipitating a mistrial. It is respectfully submitted that under the facts of this case, this Court would be well within its discretion by requiring the government to make its *James* showing pre-trial. *See United States v. Myers*, No. 12-9-JJB, 2013 WL 620909 (M.D. La. Feb. 19, 2013) ("Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court *must* be satisfied that the statement actually falls within the definition of the Rule. There *must* be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.") (internal citations and quotations omitted) (emphasis supplied).[1] The necessity of a *James* hearing is within the discretion of the district court. *Id.*

In determining whether the government has made a showing sufficient to permit the introduction of co-conspirator's hearsay, a court must bear in mind that out-of-court statements are presumptively unreliable. *Bourjaily v. United States*, 483 U.S. 171, 180 (1987). When the out-of-court statement is one made by an alleged co-conspirator purporting to implicate others in an unlawful conspiracy, its reliability is doubly suspect. *Id.* "[C]o-conspirator statements ... often have been considered to be somewhat unreliable. It has long been understood that such statements in some cases may constitute, at best, nothing more than the 'idle chatter' of a declarant or, at worst, malicious gossip." *Id.* at 197 (Blackmun, J., joined by Brennan and Marshall, JJ., dissenting). This is to say, this Court must evaluate the quality, as well as the

---

[1] Or, as stated by the Fifth Circuit, "Rule 801(d)(2)(E) contains at least four possible bases for an objection to proffered co-conspirators' testimony: that the declarant was not a co-conspirator; that the party against whom the statement is offered was not a co-conspirator; that the statement was not made "in the course" of the conspiracy; that the statement was not made "in furtherance of" the conspiracy. . . A court could entertain an objection to a co-conspirator's statement under any of these distinct bases; the objection would still, however, be "under 801(d)(2)(E)." *United States v. Burton*, 126 F.3d 666, 673 (5th Cir. 1997).

quantity of evidence the government will offer to try to meet its burden under Rule 801(d)(2)(E).

As set out in Mr. Reece's Motion for *James* hearing, the government's theory of the case is that Mr. Reece supplied chemicals,[2] which were ultimately transported to Louisiana, used in the manufacture of a product marketed under the label of Mr. Miyagi, and sold in Lafayette area retail stores. The government's theory is not that Mr. Reece was involved in the manufacture of the Mr. Miyagi (he was not), or that he shipped any of the chemicals alleged to be involved in the conspiracy to the manufacturers. Rather, the government posits that chemicals shipped by Mr. Reece's company to Nutragenomics, a company based in the Atlanta area, went from Nutragenomics to third parties and were then used in the manufacture of the Mr. Miyagi. As set out in the Defendant's Motion, Mr. Reece's company was one of many occasional suppliers to Nutragenomics. Indeed, discovery documents in this case identify no less than five Chinese suppliers of chemicals to Nutragenomics. Mr. Reece's company was also a competitor of Nutragenomics and, when offered a job by Nutragenomics co-owner Thomas Malone, Jr., Mr. Reece declined, opting to be independent and to compete with Nutragenomics in the marketplace.

Further, the chemicals supplied by Mr. Reece's company to Nutragenomics were not considered controlled substances at the time of the alleged crime. It was only after the conclusion of the alleged conspiracy that the government, for the first time, offered its opinion publicly that these chemicals were "analogues" of a controlled substance, and their possession prohibited under 21 U.S.C. § 802(32)(A). That is to say, there was not a single federal statutory reference listed in the United States Code, Code of Federal Regulation (CFR), or posting on the DEA website, which provided any notice to any member of the public that the substances alleged in

---

[2] The government takes the position that 30 kilograms of AM-2201 were involved in the charged drug conspiracy. *See* Response with Incorporated Memorandum by United States to Motion to Sever Filed by Reece, Doc. 399, P. 3.

the Indictment were illegal to possess or distribute. Further, the discovery in this case is replete with assurances by Nutragenomics and Pinnacle Products employees that the same chemicals alleged in the indictment were legal to possess and distribute during the time frame of the Indictment. Given how the Defendant is charged with drug and money laundering conspiracies (Counts One and Three), and that willfulness is an essential element of both,[3] there can be no finding that the Defendant was involved in or joined the alleged conspiracy unless (or until) it is proven that he knew that what he was doing was in violation of federal law (willfulness). The government advocates' view of what they think the evidence will be is materially different the defense's view. This Court must independently evaluate the evidence before deciding to admit prejudicial hearsay evidence against Mr. Reece.

In its response, the government acknowledges the Defendant's analysis under the *Falcon*[4]/*Direct Sales*[5] continuum,[6] but takes the position that the chemicals at issue here were a "restricted commodity," and known by the Defendant to be an analogue of a controlled substance, but offers no objective facts to support this position, nor attribution for the facts alleged. The failure to specifically identify the basis of its facts is further confirmation of this Court's need to hear the alleged evidence of a conspiracy before concluding that one exists, or permitting the government to admit conspirator hearsay subject to the government later "connecting it up."

This case is far different than the average drug case. None of the charged chemicals were listed in any controlled substance schedule, and the government must prove that the Mr. Reece

---

[3] *See United States v. Burroughs*, 876 F.2d 366, 368-70 (5th Cir. 1989); *United States v. Tobin*, 676 F.3d 1264, 1284 (11th Cir. 2012).
[4] *Falcon v. United States*, 311 U.S. 205 (1940).
[5] *Direct Sales co. v. United States*, 319 U.S. 703 (1943).
[6] *See* Memorandum in Support of Defendant Reece's Motion for Hearing Pursuant to *United States v. James*, Doc. 285-1, P. 8-12.

5

was aware of the pharmacological and chemical substantial similarities between the charged chemicals and JWH-018 before this Court or any jury could conclude there was a crime committed by Mr. Reece. As mentioned above, there was simply no notice provided by the government that AM-2201 was a controlled substance, and indeed, members of Congress and others[7] were under the same impression that these chemicals were unregulated during the time of the alleged conspiracy.[8]

Further, and has been argued separately in the Defendant's Motion to Exclude Opinions of Government Experts Pursuant to *Daubert* (Doc. 308), and to Dismiss Counts I and III of the Superseding Indictment (Doc. 315), an important predicate to the government's case is its ability to present expert testimony that the chemical and pharmacological effects of the alleged chemicals on the human body are '"substantially similar" to the effects of JWH-018. Should the Court determine that the government's chemist or pharmacologist's testimony does not meet the *Daubert* standard, there will be no proof of one or more of these essential elements of the case. Still, the hearsay evidence would be before the jury, who still must decide the remaining count in the Indictment, (Count Two, the misbranding conspiracy).

In the event that the Court is not inclined to receive evidence on this matter in a separate pre-trial hearing, a fair compromise may be to prohibit the government from offering any co-conspirator hearsay against Mr. Reece until it has met the necessary evidentiary predicates under *James*. Rather than allowing the government to later "connect up" hearsay statements to proof

---

[7] Then government's discovery contains letters from lawyers and Ph.D chemists opining that the charged chemicals were not illegal to possess. This is to be contrasted to a case charging possession of marijuana or cocaine, where the illegal nature of those substances are established as a matter of law.

[8] The Defendant's Motion to Dismiss Counts I and III of the Superseding Indictment contains quotations from numerous U.S. Congressmen demonstrating the public's perception that there was an urgent need to control these chemicals during the time frame in the indictment as they were outside of any federal regulation. *See* Defendant Reece's Memorandum of Law in Support of Motion to Dismiss Counts I and III of Superseding Indictment, Doc. 315-1, P. 37-40.

which may or may not be forthcoming, this compromise simply requires the government to structure the presentation of its evidence so that the necessary elements of *James* and Rule 801(d)(2)(E) are met prior to their attempts to offer co-conspirator hearsay. This is a fair compromise and one that has been employed by other courts. *See, e.g., United States v. Asibor*, 109 F.3d 1023, 1033 (5th Cir. 1997) ("Prior to the admission of the tapes, the government produced extensive evidence in support of the charges that Asibor, Ladejobi, Owens, and others were engaged in a conspiracy to distribute cocaine in the Jackson area. It appears that the government's sole motivation in offering the tapes was to support this proposition. Upon review of the record and the tapes, we note that the conversations contained therein involved members of the conspiracy and included statements in furtherance of the conspiracy, including specific references to actions by the appellants.") Although, and as pointed out by the government, co-conspirator hearsay statements themselves may be used to prove the preliminary facts of the conspiracy and a defendant's involvement in it, the government cannot rely solely on those statements to meet its burden; there must be evidence, beyond the statements, to demonstrate by a preponderance of the evidence the conspiracy and defendant's connection to it. *United States v. Tamez*, 941 F.2d 770, 774-75 (9th Cir. 1991).

      WHEREFORE, the Defendant, Alexander D. Reece, respectfully requests that this Court hold a hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), *cert. denied*, 442 U.S. 917 (1979), prior to the admission of any alleged co-conspirator hearsay statements against Mr. Reece, or, at a minimum, require the government to structure its order of proof at trial so as to permit this Court to determine whether the *James* requirement has been met prior to offering any co-conspirator hearsay.

Dated: April 23, 2013

        Respectfully submitted,


    *__/s/ Todd Foster_____*
TODD FOSTER
(Admitted Pro Hac Vice)
Florida Bar No.: 0325198
tfoster@tfosterlaw.com
CHRISTINA KIMBALL WALKER
(Admitted Pro Hac Vice)
Florida Bar No.: 0085093
ckimball@tfosterlaw.com
**TODD FOSTER LAW GROUP**
1881 W. Kennedy Blvd.
Tampa, FL 33606
Telephone: (813) 229-7373
Facsimile: (813) 280-9981
*Attorneys for Alexander D. Reece*

    *__/s/ Michael D. Skinner_____*
MICHAEL D. SKINNER #12118
SKINNER LAW FIRM, L.L.C.
600 Jefferson Street, Suite 810
P. O. Box 53146
Lafayette, LA 70505
337-354-3030 Telephone
337-354-3032 Facsimile
mike@law.glacoxmail.com
*Attorney for Alexander D. Reece*

8

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this 23rd day of April, 2013 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Assistant United States Attorneys J. Collin Sims and John Luke Walker by operation of the Court's electronic filing system.

        */s/ Todd Foster*
TODD FOSTER
(Admitted Pro Hac Vice)
Florida Bar No.: 0325198
tfoster@tfosterlaw.com
**TODD FOSTER LAW GROUP**
1881 W. Kennedy Blvd.
Tampa, FL 33606
Telephone: (813) 229-7373
Facsimile:  (813) 280-9981
*Attorneys for Alexander D. Reece*