UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12-CR-00146 |
| | * | |
| VERSUS | * | |
| | * | JUDGE FOOTE |
| ALEXANDER DERRICK REECE | * | |
| DREW T. GREEN | * | MAGISTRATE JUDGE HANNA |
| THOMAS WILLIAM MALONE, JR. | * | |
| BOYD ANTHONY BARROW | * | |
| JOSHUA ESPINOZA | * | |
| CURIOUS GOODS, LLC | * | |
| RICHARD JOSEPH BUSWELL | * | |
| DANIEL JAMES STANFORD | * | |
| DANIEL PAUL FRANCIS | * | |
| BARRY L. DOMINGUE | * | |

**GOVERNMENT'S MEMORANDUM IN RESPONSE
TO THE COURT'S ORDER FOR A TIMELINE OF WHEN
<u>VARIOUS MATERIAL WAS SOLD AT CURIOUS GOODS</u>**

NOW INTO COURT, comes the United States of America through the undersigned Assistant United States Attorneys who submit a timeline regarding the sale of other synthetic narcotic products and companion "accessory" products at Curious Goods stores:

On January 4, 2010, Richard Buswell purchased the Curious Goods franchise from Jack LeBlanc, Jr. for $984,000.00.[1] Between August of 2010 and September of 2011, Buswell obtained synthetic marijuana from an Arizona distributor. That material was sold under the product names Wicked X and Happy Hour.

---

[1]  A mortgage in that amount was filed on January 4, 2010 at the Lafayette Parish Clerk of Court.

1

In late 2010, Richard Buswell obtained synthetic marijuana product called Boo Berry from Mike Katter. Katter was producing the material for Curious Goods. The sale of Boo Berry grew to the point that Katter's production was unable to keep up with the customer demand of Boo Berry. In late 2010, Buswell was actively attempting to find an alternative to Boo Berry.

In late 2010 and continuing until January 2011, Buswell had Patrick Chauvin attempting to produce an in house blend of synthetic marijuana. Buswell purchased the chemicals from Nutragenomics for Chauvin's use. At the same time Buswell purchased those chemicals from Nutragenomics, he also purchased synthetic Ecstasy and amphetamine (bath salts), which were also being distributed by the Buswell organization. During this same time period, Buswell also began purchasing a substance that contained AM-2201.

In late 2010, continuing until November of 2011, Buswell was distributing Potion 9, an energy drink, and Synthax.  Synthax was marketed as synthetic Ecstasy. Buswell spiked Potion 9 with Synthax. Buswell intended to sell the compounded Potion 9 to the general public. Buswell gave this compounded mixture to employees to test its effect on people. Buswell did this covertly, without telling the employees. Employees described becoming nauseated and having difficulty moving their arms after consuming the compounded drink mixture. Additionally, a customer was sold a Potion 9 drink that was spiked without the customer being aware of that fact. The customer also had an adverse reaction to the compounded product.

At the same time that Buswell was selling the above described products, he also sold companion or accessory products to facilitate smoking the material and detoxification liquids which purported to conceal one's consumption of the aforementioned products from law enforcement. Glass pipes and "bongs" were sold at Curious Goods. It is commonly known that one purpose of these devices is to smoke substances like the synthetic marijuana sold in the Curious Goods stores. Herbal Grinders were also sold in the stores. It is commonly known that one of the main purposes of a Herbal Grinder is to grind cannabis into a product texture which allows the product to burn more evenly and improves ease of rolling when preparing a cannabis joint.

Although signs are posted in Curious Goods stores stating, "We do not sell products to help you pass a drug test," Curious Goods stocked and sold various types of detoxifying products and liquids. It is commonly believed that these detoxification products will remove various substances, to include synthetic and actual marijuana, from one's urine to prevent detection if the user of the products is asked to give a urine sample by law enforcement. Curious Goods also sold a device called a Whizzinator. It is a penis-shaped product with a reservoir compartment at the base which could be filled with "clean" or synthetic urine. The person using the Whizzinator would place the device in his pants. When asked by law enforcement or probation to give a urine sample, the person, even if watched by law enforcement or a probation officer, could appear to give a legitimate urine sample when in fact they were giving the sample contained in the reservoir of the Whizzinator.

WHEREFORE the United States prays that this description of the other products sold at Curious Goods be deemed good and sufficient. The United States further prays that this Honorable Court allow the introduction of evidence of the sale of the aforementioned products to be admitted during the trial of this matter.

Respectfully submitted,

STEPHANIE A. FINLEY
United States Attorney

s/J. Collin Sims
J. COLLIN SIMS, Bar No.  30727
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

s/John Luke Walker
JOHN LUKE WALKER, Bar No. 18077
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832
Telephone:  337-262-6618

## CERTIFICATE

I hereby certify that on June 17, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

s/John Luke Walker
JOHN LUKE WALKER
Assistant United States Attorney
