UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:12-CR-00146-(01)(06)(07)(08)(09)(10) |
| VERSUS | JUDGE FOOTE |
| ALEXANDER DERRICK REECE (01)<br>DREW T. GREEN (02)<br>THOMAS WILLIAM MALONE, JR. (03)<br>BOYD ANTHONY BARROW (04)<br>JOSHUA ESPINOZA (05)<br>CURIOUS GOODS LLC (06)<br>RICHARD JOSEPH BUSWELL (07)<br>DANIEL JAMES STANFORD (08)<br>DANIEL PAUL FRANCIS (09)<br>BARRY L. DOMINGUE (10) | MAGISTRATE JUDGE HANNA |

## REPORT  AND  RECOMMENDATION ON MOTION TO DISMISS COUNTS I, II, and III OF THE SUPERCEDING INDICTMENT
[Rec. Doc. 256]

Before the court on referral from the district court for report and

recommendation pursuant to 28 U.S.C. § 636(b) is the motion of Daniel James

Stanford (08) to Dismiss Counts I, II, and III of the Superceding Indictment, or

Alternatively for Bill of Particulars, which has been adopted by defendants Reece

(01) [Rec. Doc. 309, 332], Buswell (07) [Rec. Doc. 299, 332], Curious Goods

LLC (06) [Rec. Doc. 320, 332], Francis (09) [Rec. Doc. 388, 401], and Domingue

(10) [Rec. Doc. 357, 379].[1]  The government opposed the motion. [Rec. Doc. 403]

Oral argument was held before the undersigned on April 26 and May 2, 2013.

Following oral argument, on June 7, 2013, a supplemental brief was filed by the

government directed to the issue of whether early production of witness lists

should be made to Stanford and Domingue. [Rec. Doc. 544] On July 2, 1013,

Stanford filed a response to the supplemental brief in which he seeks all witness

*interviews and statements* instead. [Rec. Doc. 596]  Considering the evidence, the

briefs, the arguments of counsel, and the applicable law, it is recommended that

the motion to dismiss be DENIED and the alternative motion for bill of particulars

be DENIED.

## FACTUAL  BACKGROUND

The superceding indictment [Rec. Doc. 58][2] charges the defendants with

sixteen substantive counts and also contains  forfeiture allegations.  At issue are

the three conspiracy counts found in Counts I, II and III.

The indictment alleges that, as of March 2011, the synthetic cannabinoid

JWH-018 was a schedule I controlled substance.  The other synthetic cannabinoids

---

[1]     Since this motion was taken under advisement, Buswell has entered a plea of guilty and Reece has been severed.

[2]     Although a motion was filed seeking to revise the language used in the superseding indictment which was granted, all references to the indictment in this report are to the superseding indictment filed on September 4, 2012 [Rec. Doc. 58].

identified in the indictment are allegedly analogues of JWH-018 and include AM-2201, JWH-081, JWH-250, and UR-144.[3] After JWH-018 was added to schedule I, bulk quantities of synthetic cannabinoids were allegedly supplied by Reece to a business known as NeutraGenomics which was owned and operated by defendants Green and Malone.[4] NeutraGenomics supplied synthetic cannabinoids to Pinnacle Products Group, which was controlled by defendants Barrow and Espinoza,[5] to be infused into a product called Mr. Miyagi. Pinnacle manufactured Mr. Miyagi and acted as the exclusive supplier of Mr. Miyagi to Curious Goods. Curious Goods, which was controlled by Buswell, sold Mr. Miyagi to the public who would ingest it, typically by smoking it, in order to achieve a high. Mr. Miyagi contained the synthetic cannabinoid AM-2201. Defendants Stanford and Domingue allegedly received funds in excess of $245,000 from Pinnacle and Curious Goods derived from the sale of Mr. Miyagi.

In Count I, the defendants are charged under 21 U.S.C. §846 with conspiracy to violate 21 U.S.C. §841(a)(1), which prohibits the knowing or

---

[3] By separate report and recommendation, the undersigned recommended, without opposition from the government, that JWH-081, JWH-250, and UR-144 be stricken from the indictment. [Rec. Doc. 486] The district court adopted the recommendation on July 1, 2013. [Rec. Doc. 591] Therefore, discussion will center on AM-2201.

[4] Green and Malone have entered guilty pleas.

[5] Barrow and Espinoza have also entered guilty pleas.

intential manufacture, distribution, or dispensing of a controlled substance as well as the possession with intent to manufacture, distribute, or dispense a controlled substance. Through the application of 21 U.S.C. §813, commonly called the analogue statute, the prohibitions of §841(a)(1) are extended to the analogues of controlled substances listed in Schedule I of the Controlled Substances Act. (21 U.S.C. §801 *et seq*.) It is alleged that JWH-018 became a Schedule I controlled substance as of March 2011 and AM-2201 is alleged to be a controlled substance analogue, as defined in 21 U.S.C. §802(32)(A), of JWH-018.

The indictment alleges that a controlled substance analogue resembles a controlled substance in chemical structure and actual or intended physiological effect, paraphrasing the language from the definition found at 21 U.S.C. §802(32)(A). The indictment also alleges that "a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purpose[s] of any federal law, as a controlled substance in Schedule I" tracking the language of 21 U.S.C. §813.

Count II of the indictment alleges that the defendants conspired to introduce misbranded drugs into interstate commerce by packaging Mr. Miyagi in a manner that violated the Federal Food, Drug and Cosmetic Act. (21 U.S.C. §321 *et seq*.) Count II also alleges that Stanford and Francis, who had formed an entity known

as the Retail Compliance Association (RCA), trained, advised, and instructed franchise owners of Curious Goods LLC and their employees on how to store, display, and sell Mr. Miyagi products, how to detect and evade law enforcement, and how to respond to their customers' questions about Mr. Miyagi. The franchise owners were allegedly required to join the RCA and pay dues which were determined by the sales volume of each store.

Count III alleges that named co-conspirators, along with Domingue, conducted financial transactions using proceeds from the sale of Mr. Miyagi, in violation of 18 U.S.C. §1956(h). The remaining substantive counts allege various instances of money laundering by Barrow, Espinoza, Stanford, Buswell, and Domingue in violation of 18 U.S.C. §1957.

In this motion, Stanford argues generally that the superceding indictment falls short of the Constitution's due process requirement of fair notice by failing to sufficiently allege the specifics of how the charged crimes were committed. He contends that the indictment is so deficient that it fails as a matter of law, since it is vague and contains distortions of the facts and the law, forcing Stanford to guess as to how, what, when and where he allegedly committed the offenses charged in the indictment. [Rec. Doc. 256, p. 2] Alternatively, Stanford seeks an order compelling the government to provide a bill of particulars per Fed.R.Cr.P. 7.

In response to the motions [Rec. Doc. 403], the government argues that factual disputes cannot be resolved by means of the motion to dismiss the indictment and should not be considered as a basis for the motions. The government further argues that contrary to Stanford's assertions, overt acts in the indictment need not be criminal acts in and of themselves, so long as they further the joint criminal undertaking charged. In response to the vagueness allegations, the government asserts that the factual allegations set out in the indictment are sufficient to comply with the Constitution's fair notice requirements. Finally, the government argues that the defendant failed to demonstrate a basis for a Bill of Particulars.

The supplemental briefing by the government sets out specific factual reasons why neither Stanford nor Domingue should be entitled to early production of witness lists from the government citing Fed.R.Cr.P. 16 together with its legislative history, supporting jurisprudence, and Section IV(j) of the court's standing scheduling order. [Rec. Doc. 544-SEALED] Stanford challenges the factual accuracy of the government's assertions and contends he is nonetheless entitled to early production of all witness *statements and interviews* based on his Sixth Amendment right of confrontation. [Rec. Doc. 596-SEALED]

<u>**ANALYSIS**</u>

**A. <u>T</u>HE <u>S</u>TANDARD FOR <u>A</u>NALYZING A <u>M</u>OTION TO <u>D</u>ISMISS AN <u>I</u>NDICTMENT**

Rules 12(b)(2) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure supply the procedural means for a criminal defendant to challenge the sufficiency of an indictment. Under Rule 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."

To be constitutionally sufficient, an indictment must enumerate each element of the charged offense, fairly inform the defendant of the charges filed against him, and provide the defendant with a double jeopardy defense against future prosecution.[6] Fed.R.Cr.P. 7(c) requires an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged, and to cite the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that he committed each element of the offenses.[7] An indictment

---

[6]     *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir.1996); *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir.1994); and *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991).

[7]     *United States v. Guzman–Ocampo*, 236 F.3d 233, 235 (5th Cir. 2000).

setting forth the offense in the words of the statute itself is generally sufficient to satisfy these requirements.[8]  An indictment that meets minimal constitutional standards is sufficient to warrant a trial of the charges on the merits.[9]

The appropriateness of granting a motion to dismiss an indictment by pretrial motion is largely contingent upon whether the alleged infirmity is essentially one of law or involves determinations of fact.[10]  "If a question of law is involved, then consideration of the motion is generally proper."[11]  Therefore, a district court may dismiss an indictment based on the resolution of a legal question in the presence of undisputed facts.[12]

With regard to factual questions, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact."[13]  However, "[a]s a motion to dismiss an indictment

---

[8]     *United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991); *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986).

[9]     See *Costello v. United States*, 350 U.S. 359, 363 (1956).

[10]    *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), citing *United States v. Miller*, 491 F.2d 638, 647 (5th Cir.1974).

[11]    *United States v. Flores*, 404 F.3d at 324.

[12]    *United States v. Flores*, 404 F.3d at 325.

[13]    *United States v. Flores*, 404 F.3d at 324, n. 6.

for failure to state a claim is a challenge to the sufficiency of the indictment, [the district court is] required to take the allegations of the indictment as true and to determine whether an offense has been stated."[14]  Thus,"[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on the merits."[15]

**B. THE INDICTMENT IS NOT DEFICIENT BASED ON A FAILURE TO SPECIFY CRIMINAL ACTS OF EACH DEFENDANT.**

Stanford argues that the indictment fails to specify any criminal acts alleged to have been committed by him individually, (forming the RCA, attending meetings, receiving lab reports, receiving currency) are not criminal and therefore cannot form the basis for a criminal charge against him.  However, Counts I, II, and III are all conspiracy charges.   A conspiracy is an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the participants.[16]

---

[14]     *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

[15]     *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975).

[16]     *United States v. Marx*, 635 F.2d 436, 438 (5th Cir.1981); *United States v. Arredondo-Morales*, 624 F.2d 681, 683 (5th Cir.1980).

Title 21 U.S.C. §846, charged in Count I, does not require proof of an overt act.[17] Proof of the conspiracy and of the defendant's participation in itself is sufficient.[18] "[I]f the contemplated crime has been committed by any co-conspirator, the other co-conspirators, as partners of each other, may be charged as principals in the perpetration of the crime."[19] Participation in the conspiracy's common purpose and plan may be inferred from "a 'development and a collocation of circumstances.'"[20]

Title 18 U.S.C. §371, charged in Count II, requires that if "two or more persons conspire" to commit an offense and "one or more of such persons do any act to effect the object of the conspiracy" each can be convicted. Proof of a single overt act in furtherance of the agreement by a single conspirator establishes guilt of each member of the conspiracy and it is unnecessary to show that any other conspirator was present in the commission of the overt act which need not itself be a crime.[21]

---

[17] *United States v. Garcia* 655 F.2d 59, 62 (5th Cir. 1981).

[18] *United States v.Marx,* 635 F.2d at 439.

[19] *United States v. Garcia*, 655 F.2d at 62.

[20] *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir. 1979) (en banc), cert. denied, 444 U.S. 846 (1979) quoting *Glasser v. United States,* 315 U.S. 60,80 (1942).

[21] *United States v. Veltre,* 591 F.2d. 347, 350 (5th Cir. 1979); *Braverman v. United States,* 317 U.S. 49, 53 (1942).

As to Count III, the Fifth Circuit has recently explained:

> The elements of conspiracy to commit money laundering, in violation of 18 U.S.C. §1956(h), are: (i) "that there was an agreement between two or more persons to commit money laundering"; and (ii) "that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Fuchs, 467 F.3d 889, 906 (5th Cir.2006)* (citations omitted). "The government need not prove an overt act in furtherance of the conspiracy." *Id*. (citing *Whitfield v. United States*, 543 U.S. 209, 219, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005)).[22]

In a footnote regarding the knowledge element for the substantive offense of money laundering under 18 U.S.C. §1957(a), the court stated: "[W]e emphasize that the knowledge inquiry looks only to the whether the property was derived from 'unlawful activity.' Accordingly, the *mens rea* element of the offense does not extend to whether the defendant knowingly laundered the funds, only whether the defendant knew the funds were illicit and engaged in a 'financial transaction' with them regardless."[23]

Thus, it is not necessary that the indictment contain a specific overt act of illegal conduct by Stanford or any of the remaining adopting co-defendants in any of the conspiracy counts. In each count there is an allegation of an agreement to

---

[22]     *United States v. Alaniz*, 726 F.3d 586, 602 (5th Cir. 2013).

[23]     *Id.* fn. 6

conspire. In each count, the necessary allegations are contained such that Stanford and the adopting defendants are on notice of the actions of at least one alleged co-conspirator in furtherance of the conspiracy. There are also sufficient allegations that each conspirator joined the agreement with knowledge of its purpose. Therefore, as it pertains to Counts I, II, and III of the superceding indictment, this Court concludes that the fact specific criminal acts are not attributed to the remaining moving defendant(s) will not render the indictment counts defective.

## C. COUNT I IS NOT UNCONSTITUTIONALLY VAGUE OR OTHERWISE DEFECTIVE.

Stanford urges that Count I is defective in that (a) it does not contain sufficient and specific facts necessary to support the core criminality of the offenses alleged against him; (b) the government incorrectly concludes that JWH-018 is a Schedule I controlled dangerous substance as of March, 2011; (c) the government fails to specify what criminal offense he committed or how he committed a criminal offense; and (d) the government makes incorrect factual statements regarding Stanford's involvement in the events at issue. [Rec. Doc. 256, pp. 3-5][24]

This Court disagrees that the allegations that Count I are defectively vague.

---

[24]     The last two arguments have been disposed of in Paragraph B of this report since that section deals with all three conspiracy counts.

Count I contains the elements of the charged offense, including the definition of a controlled substance analogue, its treatment as a controlled substance in Schedule I, and the identification of the controlled dangerous substance that is the subject of the charged offense. The parties are identified and their alleged participation as co-conspirators is described in detail, prefacing the allegation that they

> did knowingly and intentionally combine, conspire, confederate and agree together, and with other persons known and unknown to the Grand Jury, to ... distribute and possess with intent to distribute a mixture and substance containing a detectable amount of AM-2201, JWH-081, JWH-250, and UR-144, Schedule I controlled substance analogues as defined in 21 U.S.C. §802(32)(A), knowing that the substance was intended for human consumption as provided in 21 U.S.C. §813.[25]

The alleged conspiracy is confined to the time period from on/about March 1, 2011 through July 25, 2012. Twelve separate Overt Acts are described in the indictment, four of which describe the alleged actions by Stanford, and all of which reference the dates of the alleged occurrences. [ Rec. Doc. 58, pp. 5-6] Stanford is alleged to have communicated personally and by email with other co-conspirator defendants and to have received currency and checks from alleged co-conspirators. These factual assertions are necessarily accepted as true for purposes of the Court's analysis. Count I adequately sets forth the elements of the

---

[25]        Rec. Doc. 58, pp. 1-4.

statutory violations charged, along with the statutory citations to each. The

information contained in Count I is sufficient to place Stanford and the remaining

adopting defendants on notice of the crime with which they are charged.

As to the contention that Count I is defective because the government

incorrectly concluded that JWH-018 is a Schedule I controlled dangerous

substance as of March, 2011, the undersigned has considered and rejected that

argument in response to the Motion to Dismiss Superseding Indictment by

Domingue [Rec. Doc. 205], which was adopted by Stanford and other

defendants.[26] The district court adopted that recommendation over the objection

of the defendants with a point of clarification. [Rec. Doc. 593]

In the Report and Recommendation issued March 25, 2013 [Rec. Doc. 280],

the undersigned found that the DEA complied with the procedural requirements of

21 U.S.C. §811(h) in adding JWH-018 to schedule I in March, 2011, and the

DEA's alleged failure to comply with the notice requirements of 5 U.S.C. §

801(a)(1)(A) did not preclude the addition of JWH-018 to schedule I. Therefore,

the undersigned found "that JWH-018 was a controlled substance on and after

March 1, 2011, and that its chemical analogue AM-2201 should also be

---

[26] The motion was adopted by Reece [Rec. Doc. 210, 218], Buswell [Rec. Doc. 215, 222], Francis [Rec. Doc. 248, 269], and Stanford [Rec. Doc. 212, 220].

treated as such pursuant to 21 U.S.C. §813." [Rec. Doc. 280, p. 21]

In adopting the recommendation, the district court clarified that, "pursuant to 21 U.S.C. §813, *if AM-2201 is in fact* a chemical analogue of JWH-018, it should also be treated as a controlled substance as of that date." [Rec. Doc. 593, p. 2] (emphasis added)

Stanford has presented no new argument or legal precedent to warrant a change in those findings. On that basis, and for the same reasons, the undersigned rejects this argument and finds that JWH-018 was a controlled substance on and after March 1, 2011, and that if AM-2201 is in fact a chemical analogue of JWH-018, it should also be treated as a controlled substance pursuant to 21 U.S.C. § 813.

## D.  COUNT II OF THE INDICTMENT IS NOT UNCONSTITUTIONALLY VAGUE OR OTHERWISE DEFECTIVE.

As to Count II, Stanford makes similar allegations of vagueness, factual misstatements, and  that the indictment does not sufficiently specify what product(s) and/or alleged product(s) were alleged to have been misbranded or the time frame or places where the alleged conduct was to have occurred.  Further, Stanford claims that the indictment does not sufficiently specify what criminal offense he is alleged to have committed or how it was part of the conspiracy

charged. He again points to the absence of detail regarding when, what, where and how he is alleged to have engaged in unlawful conduct.

In considering the adequacy of Count II, as set forth above, factual disputes are matters for the jury to determine, and they should not be considered as a basis for a motion to dismiss. As set forth above, since the crime charged is a conspiracy, the fact that specific criminal acts are not attributed against the moving defendant does not render this count of the indictment defective.

Provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §321 are set out in detail in Count II. [Rec. Doc. 58, pp. 6-8] The elements of the charged crime are described, including the applicable definition of a "drug" set out in the Act and relied upon in the indictment. Portions of the factual allegations of Count I are incorporated by reference to Section I, Paragraphs D-H of that count, which describe the roles of the conspirators in the alleged distribution of AM-2201 and Mr. Miyagi. The alleged conspiracy is described within a set time frame, and it is alleged the named defendants, "with the intent to defraud and mislead, did knowingly and intentionally combine, conspire, confederate and agree together, and with other persons known and unknown to the Grand Jury," "to obtain and distribute, in interstate commerce, to consumers and other distributors, misbranded drugs for profit."[Rec. Doc. 58, pp. 8-9]

The elements and statutory citations to the crimes charged are established within the allegations of Count II, with descriptions of the product at issue, "Mr. Miyagi," and the actions of the named defendants. Included are specific references to Stanford and actions taken by him in December, 2011. [Rec. Doc. 58, pp. 9-10] These are all factual allegations that must be accepted as true for purposes of this motion, and which are left for determination by the jury.

In a Report and Recommendation issued on May 15, 2013, the undersigned considered Buswell's Motion to Dismiss Count II of the Superseding Indictment, which was adopted by some of the movants herein,[27] and concluded that the allegations in Count II sufficiently enumerate the elements of the offense and provide sufficient citations to the law to place the defendants on notice of the charges against them and to assert double jeopardy as a defense against any future prosecutions. [Rec. Doc. 505] The undersigned further concluded that the FDCA is not unconstitutionally vague as applied and that the indictment sufficiently alleged that the defendants' intended use of Mr. Miyagi was for purchasers "to achieve a high" through human consumption and this intended use brought the product within the definition of a "drug" as set forth in 21 U.S.C. §321(g)(1)(C).

---

[27] The motion [Rec. Doc. 297] was adopted by Reece [Rec. Doc. 312,332], Stanford [Rec. Doc. 337,346], Francis [Rec. Doc. 388,401], and Domingue [Rec. Doc. 362,374].

On September 13, 1013, the district court adopted the Report and Recommendation over the objections of the defendants. [Rec. Doc. 650] Therefore, the same findings and conclusions are drawn in consideration of the instant motion, and the undersigned again concludes that Count II is neither insufficient nor unconstitutionally vague.

**E.  COUNT III OF THE INDICTMENT IS NOT UNCONSTITUTIONALLY VAGUE OR OTHERWISE INSUFFICIENT.**

Stanford argues that Count III of the indictment does not sufficiently specify "what nor the amounts of the financial transactions Stanford knowingly conducted with the intent to promote the carrying on of the specified unlawful activity (SUV)". [Rec. Doc. 256, p. 7]   Stanford also argues that the indictment fails to "sufficiently specify when, where, and how Stanford knowingly conducted these alleged financial transactions with the intent to promote the carrying on of the SUV." [Id.]

As set forth above, the elements of conspiracy to commit money laundering are that there was an agreement between two or more persons to commit money laundering and that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose.[28]   Further, as to the underlying

---

[28]     *United States v. Alaniz*, 726 F.3d at 602.

substantive offense of money laundering, the issue is whether the property was derived from 'unlawful activity,' the defendant knew the funds were illicit and engaged in a 'financial transaction' with them anyway.[29]

The allegations in the conspiracy count are that the defendants' knowingly conducted or attempted to conduct financial transactions which involved proceeds of "specified unlawful activity, to wit: the distribution of a mixture of and substance containing a detectable amount of AM-2201, . . .[a] Schedule I controlled substance analogue as defined in 21 U.S.C. §802(32)(A), knowing that the substance was intended for human consumption as provided in 21 U.S.C. §813 with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18 United States Code, Sections 1956(a)(1)(A)(i). " [Rec. Doc. 58, p. 11]. "Specified unlawful activity" is defined to include dealing in controlled substances. 18 U.S.C. §1956(c)(7)(A).

With regard to money laundering under 18 U.S.C. §1957(a), it is alleged that the defendants "knowingly engaged or attempted to engage in monetary transactions . . . in criminally derived property. . .that was derived from specified unlawful activity, to wit: the distribution of a mixture of and substance containing a detectable amount of AM-2201, . . .[a] Schedule I controlled substance analogue

---

[29]     *Id.*

as defined in 21 U.S.C. §802(32)(A), knowing that the substance was intended for human consumption as provided in 21 U.S.C. §813 in violation of Title 18 United States Code, Section 1957(a)."

The allegations adopted from Count I that are pertinent to this inquiry include the allegations that Mr. Miyagi was infused with AM-2201, sold to Curious Goods and that proceeds from the sale of Mr. Miyagi were the subject of various financial transactions by Stanford and the remaining adopting defendants. [Rec. Doc. 58, p. 12]

All of these allegations collectively indicate knowledge on the part of the defendants as to the unlawful activity and that the funds known to be derived from that unlawful activity were used in various financial transactions. Under the standard that must be applied in resolving this Rule 12 motion, the Court is required to accept the factual allegations set forth in the indictment as true. Therefore, this Court cannot decide whether AM-2201 is in fact a controlled substance analogue, or whether the defendants knew that the Mr. Miyagi products sold by Curious Goods contained a controlled substance analogue. Similarly, this Court cannot decide whether funds Stanford received from Curious Goods were only payment for his legal services to Buswell in an unrelated matter. These factual issues must be decided by the jury at trial on the merits. What is alleged,

and accepted as true for purpose of this motion, is that Stanford and the remaining adopting defendants to which these allegations are applicable knew about the unlawful activity, the sale of a controlled substance, and knew that the funds they obtained came from that unlawful activity and were used in various transactions anyway.

In a  Report and Recommendation on a motion to dismiss the money laundering counts filed by Buswell [Doc. 294], and adopted by each of the moving defendants herein[30], this Court found that Count III of the superseding indictment contains the essential elements of the money laundering conspiracy, fairly informs the defendants of the charges against them, and insures that there is no risk of future prosecutions of these defendants for these same money laundering conspiracy offenses. [Doc. 504]

On September 13, 2013 the district court adopted the report and recommendation over the objections by the defendants. [Rec. Doc. 650] That decision is not challenged with any new argument or authority by this motion, therefore, this Court concludes, again, that Count III states the essential facts and elements of the crime charged as required by Rule 7 and the Constitution.

---

[30]The motion [Rec. Doc. 294] was adopted by defendants Reece [Rec. Docs. 311, 332], Curious Goods [Rec. Docs. 320, 332], Stanford [Rec. Docs. 341, 346], and Domingue [Rec. Docs. 358, 379].

**F. THE ALTERNATIVE REQUEST FOR BILL OF PARTICULARS.**

Stanford advances the alternative argument that if this Court does not dismiss Counts I, II and III of the indictment, it should compel the government to provide a bill of particulars. Rule 7(f) provides that a defendant may move for a bill of particulars before or within 14 days after arraignment, or at a later time if the court permits. Although the motion is outside the allowable time window, in the exercise of its discretion, this Court will consider the motion as presented.

"The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution."[31] A bill of particulars is not a means to obtain general discovery.[32] Moreover, it may not be used "for the purpose of obtaining a detailed disclosure of the Government's evidence in advance of trial."[33] "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a

---

[31] *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir.1977); *see also United States v. Shepard*, 462 F.3d 847, 860 (8th Cir.2006) *United States v. Kirkham*, 129 Fed.Appx. 61, 71 (5th Cir.2005).

[32] *United States v. Davis*, 582 F.2d 947, 951 (5th Cir.1978).

[33] *Downing v. United States*, 348 F.2d 594, 598 (5th Cir.1965); *see also United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.1978).

defendant notice of the crime of which he is charged."[34] Whether to grant a bill of particulars is within a trial court's sound discretion; for practical purposes, the trial court's decision is almost invariably final.[35]

The defendants' request relative to Count I is for details about the "controlled substance analogue[s]" referenced in the count, including the identity of the creator of the substance, the date the government learned of its existence, the date the government first determined it to be a "controlled substance analogue" to a schedule I controlled dangerous substance, and the government's methodology and basis for such conclusion. [Rec. Doc. 256, pp. 13-14] Stanford additionally seeks details of the date, place, time, names of alleged participants, and other specifics, including documents, regarding the alleged conspiracy referenced in Count I, and the government's investigation regarding same. He also seeks the name of the unindicted coconspirator[36] who allegedly gave him money on December 8, 2011.

---

[34]     *United States v. Ramirez*, 233 F.3d 318, 323 (5th Cir.2000), *overruled on other grounds by United States v. Longoria*, 298 F.3d 367 (5th Cir.2002).

[35]     *United States v. Mackey*, 551 F.2d at 970; *see also United States v. Davis*, 582 F.2d at 951. (Determination of whether a bill of particulars is needed is "seldom subject to precise line drawing.")

[36]     This individual is identified as Paul Buswell in the government's opposing memorandum. [Rec. Doc. 403, p.3, note 2]

As to Counts II, III, and the remaining counts in the indictment incorporated into the forfeiture allegations, Stanford requests similar 'basis and manner and means" information, including dates, places, times and names of alleged participants in the events described in the counts, "The Meeting" referenced in the counts and related documents.

At a hearing on May 2, 2013, discussed below, this Court raised the issue of requiring the government to produce a witness list identifying the witnesses who may testify that they were "taught" or "trained" by the defendants as alleged in the indictment. The government indicated its reluctance to do so and additional briefing was ordered. [See transcript of May 2 hearing, Rec. Doc 519, pp 246-257] The government filed its brief under seal making a number of factual allegations against the defendants with exhibits which may or may not be admissible evidence. [Rec. Doc. 544-SEALED] In response, also under seal, one defendant denies the allegations, offers information without evidence in opposition and then focuses his request on production of these witnesses' statements and all witness interviews. [Rec. Doc. 596-SEALED]

As this Court has found multiple times, all of which have been adopted by the district court, the indictment is sufficient to place the defendants on full notice of the crimes with which they have been charged and to provide them with a basis

to plead double jeopardy. Therefore, the request for a bill of particulars on this basis is meritless. Having drawn this conclusion, the sole question remaining is whether the defendants would be entitled to a bill of particulars to obviate surprise at trial.

This Court has participated in numerous conferences with the parties to keep the flow of information in discovery moving to the point tens of thousands of documents have been produced. The recorded statements of Paul and Richard Buswell have been provided to Stanford which contain much of the information he seeks. Stanford has been privy to all the evidence and transcripts from the Conflict and detention hearings in United States v. Buswell 6:11-cr-198 as well as the evidentiary hearing in this matter of April 26 and May 2, 2013 where much of the information he seeks has been disclosed.

In response to a motion to compel filed by Reece, [Rec. Doc. 227] this Court issued an order requiring the government to specify all evidence it intended to offer in its case-in-chief from among those items discoverable under Fed.R.Cr.P. 16 no later than 45 days in advance of trial. [Rec. Doc. 331]

Stanford also filed a motion to compel seeking much of the information

sought in the pending request for a bill of particulars. [Rec. Doc. 246, 249][37] That

motion was raised, albeit not addressed in detail, at the hearing on April 26, 2013

together with the "remnants" of what was left to be resolved of the Reece's motion

to compel found at Rec. Doc. 227.  [See Rec. Doc. 484]

At the hearing the government disclosed that interviews of employees done

by the government had not been turned over to the defendants citing the *Jencks*

Act (18 U.S.C. §3500), and that there was a basis for its reluctance to depart from

*Jencks* Act requirements in this particular case.  [See transcript of April 26

hearing, Rec. Doc. 495, pp. 33-38]

Following that hearing, this Court ordered that statements of any

government witnesses must be produced in accordance with Rule 16(a)(2), the

*Jencks* Act and the scheduling order of the court and that the government should

turn over any *Brady* material promptly upon its discovery. [Rec. Doc. 485] This

Court also issued a supplemental order pertaining to Rec. Doc. 227 in which this

Court ordered that non-*Brady* material contained in  reports of interviews and any

other documentation of statements by co-conspirators, co-workers and/or

employees of the defendants wherein any have expressed the belief that the

---

[37]     The government's opposition is found at Rec. Doc. 324 and Stanford's reply is
found at Rec. Doc. 356.

charged substances were legal to possess and distribute did not need to be produced other than in compliance with the *Jencks* Act or the scheduling order of the court. [Rec. Doc. 477, pp. 5-]

"The Supreme Court has established that there is no constitutional right to pretrial discovery of witnesses in non-capital cases."[38]  The requirement of *Brady vs. Maryland*[39] that exculpatory evidence be disclosed by the prosecution does not require the prosecution to reveal before trial the names of all witnesses who will testify unfavorably to the defendant.[40]  Likewise, neither Rule 16 nor the standing scheduling order of the court require the production of a complete witness list.[41] The scheduling order requires production of *Brady, Kyles* and *Giglio* material seven days before trial. While a real time glossary of witness names is to be provided to the Trial Judge's court reporter, the scheduling order expressly provides that the glossary need not be disclosed to opposing counsel.

However, a district court has discretion to require a list of the government's

---

[38]     *United States v. Aguilar,* 503 F.3d 431, 434 (5th Cir. 2007) citing *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977).

[39]     *Brady vs. Maryland,* 373 U.S. 83 (1963).

[40]     *Weatherford v. Bursey,* 429 U.S. at 559.

[41]     The scheduling order does have provisions for early disclosure of a witness who will supply 404(b) evidence.

witnesses be produced to the defendant.[42] Thus, even the well recognized need to protect the identity of a confidential informant may yield to the need of a defendant to adequately prepare his defense.[43]

The government has alleged that Stanford and Francis "trained, advised, and instructed the individual franchise owners of Curious Goods L.L.C. and their employees . . . how to detect and evade law enforcement" at a meeting at which Domingue was present. [Rec. Doc. 58, p. 5, 9] There is evidence that perhaps as many as forty interviews have been conducted and the defendants are aware of a number of the interviewees. Presumably, these defendants know who was at that meeting and these defendants already have or will obtain the identities and/or statements of any witnesses who might provide exculpatory information. Perhaps that is why the focus has shifted from the production of a witness list to production of a list of all witness interviews and statements.

The government has repeatedly represented that it will produce *Brady* materials promptly. This Court has already ruled that statements of witnesses will be produced in accordance with the scheduling order of this court, Rule 16(a)(2) and/or 18 U.S.C. 3500, (Jencks Act) and does not at this time, see any basis to

---

[42]     *United States v. Mosely*, 450 F.2d 506, 510 (5th Cir. 1971); *United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982).

[43]     *Roviaro v. United States*, 353 U.S. 53, 60 (1957)

depart from those requirements as disclosure under those conditions will allow the defendants to adequately prepare their  defense and avoid surprise at trial. Therefore, it is recommended that the motion for bill of particulars be denied. However, in the event the defendant still seeks the early disclosure of the identities of witnesses favorable to the government, given that the factual allegations by the government, which have been denied, might require an evidentiary hearing to determine their truth, this Court would recommend that be brought to the attention of the district court by objection to this Report and Recommendation.[44]

### Conclusions and Recommendations

Based on the foregoing, the undersigned concludes that Counts I, II, and III of the Superseding Indictment are constitutionally sufficient, and they are compliant with the requirements of Federal Rule of Criminal Procedure 7(c).  It is therefore recommended that the motions to dismiss Counts I, II, and III of the Superseding Indictment be DENIED.

Given the findings that the indictment is sufficient to put the defendants on notice of the crimes with which they have been charged, to adequately prepare their defense and to plead double jeopardy, the undersigned further finds that a bill

---

[44]      To the extent such an evidentiary hearing goes forward, this Court recommends the appointment of standby counsel be appointed for defendant Stanford, who is pro se.

of particulars is not warranted in the instant case as the required disclosures of witness statements will enable the defendants to prepare their defense and avoid surprise at trial. Therefore, the undersigned recommends the motion for bill of particulars be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b)(2), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed. R. Cr. P. 59(b)(2).

Signed at Lafayette, Louisiana this 24th day of October, 2013.

_____
Patrick J. Hanna
United States Magistrate Judge