UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 12-00146-08-10 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ALEXANDER DERRICK REECE, ET AL | MAGISTRATE JUDGE PATRICK HANNA |

### MEMORANDUM RULING

Before the Court is a Motion for In Camera Inspection of Documents for Presence of Exculpatory and Impeaching Information [Record Document 274],[1] filed by severed Defendant Alexander Derrick Reece (01), as well as the related filings, made under seal by Thomas William Malone, Jr. (03) [Record Documents 416 and 417]. The issues before the Court are as follows: (a) whether or not an attorney-client relationship existed between Defendant Malone (03) and an individual named Don Wirtshafter, with whom Malone is communicating in the documents at issue; (b) whether there exists any crime fraud exception to any such privilege; (c) whether the interplay between attorney-client privilege and the defendants' Sixth Amendment rights under the Confrontation Clause nonetheless mandates disclosure of otherwise privileged material;[2] and (d) whether the communications

---

[1] Reece's motion was adopted by Defendants Buswell (07) [Record Documents 298, 346]; Stanford (08) [Record Documents 342, 346]; Francis (09) [Record Documents 396, 401]; and Domingue (10) [Record Documents 306, 332].

[2] Upon request by the Court, and without benefit of having reviewed the communications at issue, the Government filed a general brief outlining the interplay between the confrontation clause and attorney-client privilege. *See* Record Document 728.

1

at issue constitute material requiring disclosure under the jurisprudential rules established by the well-known decisions in *Brady*, *Giglio*, or *Kyles*.[3]

The Court has reviewed the communications [Record Documents 275 and 416] and considered the arguments for and against a finding of attorney-client privilege [Record Documents 426, 761, 717 and 742]. Upon due consideration, and for the reasons discussed below, the Court hereby finds that the communications at issue were made within the confines of an attorney-client relationship between Defendant Malone (03) and Don Wirtshafter and that the communications are not subject to the crime-fraud exception. Accordingly, unless Defendant Malone (03) waives the privilege, said communications are inadmissible and likewise undiscoverable. The Court further finds that the defendants do not have a right to the materials under the Confrontation Clause nor do the communications implicate disclosure concerns under the jurisprudential principles enunciated in *Brady*, *Giglio*, or *Kyles*.

## BACKGROUND

Although the Court is mindful that these unique issues necessitate minimal elucidation of the relevant facts, the Court nonetheless will attempt to lay a general foundation in the interest of context. A hearing was held on the merits of Reece's motion on April 16, 2013.[4] Prior to the hearing, counsel for Defendant Reece had attempted to

---

[3] Record Document 426, p. 16 (referring to *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and *Kyles v. Whitley*, 514 U.S. 419 (1995)).

[4] The April 16th hearing proceeded as follows: As the Court had several case-related issues on its docket that day, the Court allowed all counsel in this matter to make appearances for the record, before excusing all except counsel for Reece (01) and Malone (03). Aside from these two defendants and their attorneys, the courtroom was sealed, and the Court heard argument from both counsel, as well as testimony from Defendant Malone (03), regarding the general nature of the documents and

provide the Court with five (5) exhibits, in support of his motion; however, three (3) of the intended exhibits had been omitted from Reece's original filing and were not presented to the Court until the date of the hearing.[5] The two exhibits which were successfully filed and referred to in Reece's motion as Exhibits 4 and 5, consist of excerpts of email and Skype chat correspondence between Malone and Don Wirtshafter.[6] Counsel for Reece represented to the Court that, upon receipt of the entirety of the communications from Wirtshafter, counsel for Reece had declined to view the communications and instead hired an outside attorney for the purpose of reviewing the documents to determine whether they might qualify as privileged material. The other three exhibits, not provided to the Court until the date of the hearing, consist of an email dated February 3, 2013, sent from Defendant Malone to Don Wirtshafter (Exhibit 1);[7] a sealed affidavit of Don Wirtshafter (Exhibit 2);[8] and a sealed affidavit of David Ristoff (Exhibit 3), the Florida attorney retained by Reece's counsel to review the documents in order to make a privilege determination.[9]

---

communications at issue [Record Documents 275, 473-1, and 474]. Thereafter, the Court excused Defendant Reece (01), as well as all counsel present on his behalf, and conducted further examination of Defendant Malone (03), with only his counsel present to the exclusion of all others. The portion of these proceedings for which Reece (01) and his counsel were present, was ultimately unsealed, and the transcript thereof was made part of the public record [Record Document 426].

[5] *See* Record Documents 473-1 and 474.

[6] *See* Record Document 275 (manual attachments).

[7] *See* Record Document 473-1.

[8] *See* Record Document 474, pp. 1-3 (sealed) (Despite the representations, made in Wirtshafter's affidavit, that he did not have an attorney-client relationship with Malone, the finds that the entire body of communications between those two individuals paints a different picture. A comprehensive review, as discussed in this ruling, compels a finding of attorney-client privilege, which is supported by Malone claiming same.).

[9] *See* Record Document 474, pp. 4-6 (sealed).

At the outset of the hearing, Reece's counsel described the nature of the relationship between his client and Don Wirtshafter. According to Reece's counsel, Wirtshafter used to provide a newsletter, which tracked changes in relevant laws and upcoming legislation, through which he came to know various individuals interested in his newsletter, including Reece.[10] Apparently, Wirtshafter touched base with Reece's defense team sometime around late November 2012, with the disclosure of potentially privileged communications occurring sometime thereafter, possibly even as late as January 2013.[11] Wirtshafter met with attorney David Ristoff, at which time the two of them reviewed the communications submitted to Reece's defense team for the purpose of authenticating the communications and determining whether they were subject to any attorney-client privilege which might militate against further disclosure of the documents. Upon completion of that review, Wirtshafter and Ristoff isolated a limited selection of communications, from which Ristoff believed an attorney-client relationship might be construed and thus should be submitted to the Court for *in camera* review.[12] However, upon "placing these communications in context with the Plea Agreement," Ristoff further opined that the communications fell within the crime-fraud exception to the attorney-client privilege.[13]

---

[10] Record Document 426, p. 21.

[11] Record Document 426, pp. 22-23.

[12] Record Documents 474, p. 5; and 426, p. 28.

[13] *Id.*; *see also* Record Document 426, pp. 28-29.

The Court expressed its displeasure at the representation that an entire body of communications existed, from which the Court was only being presented with a small sampling for purposes of its review.[14] Based on the Court's concerns, counsel for Malone offered and ultimately filed what he represented to be a complete set of emails, taking place over an extended period of time, between Malone and Wirtshafter.[15] These communications were offered to the Court for *in camera* review, in connection with the previously filed Exhibits 4 and 5, so that the Court could determine whether the communications were made within the confines of an attorney-client relationship. Despite the good faith representation made by counsel for Malone, a comparison of the emails submitted by Malone and Reece reveal that Malone likewise failed to present the Court with a complete set of communications between himself and Wirtshafter.[16] Nonetheless, based on the entire body of communications submitted from both Malone and Reece, the Court is confident that it has developed an appreciation of the real relationship between Wirtshafter and Malone, as discussed below.

---

[14] Record Document 426, pp. 26-28.

[15] Record Document 426, pp. 25-26; Record Documents 416, 416-1, and 416-2 (collectively, Malone's set of Skype, text, and email communications).

[16] According to the Court's review, there were several emails submitted by Reece's counsel which are not included in the ostensibly "complete" set of emails submitted by counsel for Malone. The Court does not mean to insinuate any wrongdoing on behalf of any attorney in this case; however, the Court found the discrepancy odd and further noted at least one area in which seemingly identical emails reflect a time that is one minute different than its otherwise identical counterpart. [*Compare* Record Document 416-2, p. 28, *with* Record Document 275, Exh. 4].

## LAW AND ANALYSIS

### Attorney-Client Privilege and Crime-Fraud Exception

The Supreme Court has "recognized the attorney-client privilege under federal law, as 'the oldest of the privileges for confidential communications known to the common law.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In protecting communications that fall within the attorney-client privilege, the central concern is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "That purpose, of course, requires that clients be free to make full disclosure to their attorneys of past wrongdoings, in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice." *Id.* (internal quotations and citations omitted). "The attorney-client privilege prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice." *United States v. Pipkins,* 528 F.2d 559, 562 (5th Cir. 1976) (citations omitted). However, the privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*." *Zolin*, 491 U.S. at 562-63 (emphasis in original) (internal citations omitted). Thus, the crime-fraud exception exists to assure that the privilege-based secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. *Id.* at 563 (internal citations omitted). The proponent of otherwise privileged evidence, "has the burden of establishing a prima facie case that the attorney-client relationship was intended

6

to further criminal or fraudulent activity." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (quoting *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000)).

The Court has pored over the relevant documents with a careful eye, reviewing each communication for individual content and then assessing the entire body of communications in an effort to understand the true nature of the relationship between Wirtshafter and Malone. Before even considering the communications within the context of other related events, namely the commencement of a relationship between Wirtshafter and Reece's defense team, the Court's initial review indicated an attorney-client relationship between Wirtshafter and Malone. That interpretation was bolstered by two additional factors: (1) the fact that Malone appeared before this Court and, both he and his counsel, stated unequivocally that he believed there to be an attorney-client relationship;[17] and (2) both the timeline of events surrounding Malone's drafting of the email referred to as Exhibit 1, as well as the actual language used in that email.[18] As to the former, Malone's representations are supported by the Court's independent review. The latter is discussed in more detail below.

As previously mentioned, Wirtshafter allegedly touched base with Reece's defense team sometime around late November 2012. Thereafter, and possibly as late as January 2013, Wirtshafter disclosed these potentially privileged communications to Reece's defense team. It is plainly evident to this Court, from both the arguments submitted at the April

---

[17] *See* Record Documents 426, pp. 58-61; *see also* Record Document 761.

[18] *See* Record Document 473-1.

7

hearing as well as the substance of the relevant documents, that Wirtshafter had a strong personal interest in becoming a paid consultant for Reece and his defense team. Fueled by that interest, Wirtshafter directed Malone to write and send the above-mentioned email on February 3, 2013, which had the intended self-serving effect of ostensibly negating the existence of any attorney-client relationship between Malone and Wirtshafter so that there was no impediment to Wirtshafter acting as a Reece consultant in this case.[19] Although a superficial reading of that email might seem to negate a finding of an attorney-client relationship, this Court refuses to accept this text in isolation from all other evidence to the contrary.

After reviewing all relevant communications, the Court inquired of Malone whether he could explain the nature and extent of his involvement with two relevant organizations, the Coalition for Cognitive Liberty (CCL) and the Retail Compliance Association (RCA).[20] Malone's sealed response made it clear that Wirtshafter was "in house counsel" for CCL, and Malone "served as the Treasurer or CFO or basically in charge of the books."[21] Malone's response likewise states that "CCL was formed sometime in Q4 of 2010" and "went by the wayside sometime in early 2011."[22] Malone's response explained the commencement and development of the relationship between Wirtshafter and Malone in the context of the CCL and further bolstered the Court's appreciation of the context of the

---

[19] *See* Record Document 416, p. 21; 416-2, p. 75.

[20] Record Document 730.

[21] Record Document 761, pp. 1-2.

[22] *Id.* at p. 2.

communications between the two individuals. Generally, the elements necessary to establish an attorney-client privilege are as follows:

> 1) the asserted holder of the privilege is or sought to become a client; 2) the communication is made to an attorney or his subordinate, in his professional capacity; 3) the communication is made outside the presence of strangers; 4) for the purpose of obtaining an opinion on the law or legal services and 5) the privilege is not waived.

*In re Shell Oil Refinery*, 812 F. Supp. 658, 661 (E.D. La. 1993) (citing *New Orleans Saints v. Griesedieck*, 612 F. Supp. 59, 62 (E.D. La. 1985), *aff'd*, 790 F.2d 1249 (5th Cir. 1986)). The Court finds that it is clear that Malone's relationship with Wirtshafter began in the context of Wirtshafter acting as in-house attorney for an organization for which Malone acted as CFO; that relationship ultimately developed into one of a more general attorney-client posture; that all relevant communications were made by and between the client (Malone) and the attorney (Wirtshafter) and no one else;[23] that Malone never shared these communications with a third party;[24] that the communications consistently evidence an intended purpose, on behalf of Malone, to seek legal opinions or services from Wirtshafter;[25] and that Malone has consistently refused to waive the privilege, as discussed above.

---

[23] In support of the finding that these communications were made by Wirtshafter in his professional capacity, the Court notes that several relevant emails contained "Wirtshafter Law Office" within Wirtshafter's signature block, followed by a legal "confidentiality notice," signifying that the email "is confidential and contains legally privileged information…". *See e.g.* Record Document 416-2, p. 11.

[24] *See* Record Document 426, pp. 60-61.

[25] *See generally* Record Documents 416, 416-1, 416-2, and 275.

Accordingly, the communications were made within the confines of an attorney-client relationship and are thus privileged. Furthermore, the Court sees no evidence which might qualify these communications for the crime-fraud exception. To the extent any evidence of crime-fraud arguably existed, the Court was satisfied by the explanations given by Malone's counsel during the sealed portion of the April hearing and finds that no defendant has met its burden of proving otherwise.[26] That said, the Court recognizes that evidentiary privileges are not absolute, such that constitutional rights like the right of confrontation conferred by the Sixth Amendment, *can* indeed trump the establishment of attorney-client privilege.

**Confrontation Clause**

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citing *Delaware v. Fensterer*, 474 U.S. 15, 18–19 (1985) (per curiam)). "Of course, the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." *Id.* at 51-52 (citations omitted). "The ability to question adverse witnesses, however, does not include

---

[26] Without revealing privileged information, the Court was satisfied with attorney Steve Sadow's explanation that any apparent waffling by Malone, regarding his plea agreement, was born of confusion rather than bad intentions.

the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53. "Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id.* at 53 (citing *Fensterer*, 474 U.S. at 20). Thus, the Supreme Court explained in *Ritchie* that the right to confrontation is a *trial* right and does not compel the pretrial production of information that might be useful in preparing for trial. *Id.* at 52-53.

In this case, the Court understands that the defense has subpoenaed Malone to testify at trial. As Malone has pled guilty and is now cooperating with the Government, the defense has indicated to the Court that it intends to examine him as an adverse witness under Federal Rule of Evidence 611(c). It is undisputed that Malone never traveled to the Western District of Louisiana for any reason relevant to this case, prior to entering a guilty plea in this matter. It is also the Court's understanding that neither Stanford nor Domingue are alleged to have ever interacted with Malone personally. Considering the totality of facts and circumstances, in light of the content of these privileged documents and communications, the Court is not compelled to abandon the protections of the attorney-client privilege in favor of pretrial discovery expeditions by the defense. As the Seventh Circuit explained in *United States v. Rainone*, the right of cross-examination may be limited by the trial court for a good reason, "and here as in the usual case desire to protect the attorney-client privilege [is] a good reason." 32 F.3d 1203, 1207. (7th Cir. 1994).

**Disclosure Concerns**

The holding of the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) was "that the suppression by the prosecution of evidence favorable to an accused upon request

11

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Since *Brady*, the Supreme Court has further held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and the duty likewise encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985). Under the rule, as extended in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Evidence is deemed material under these rules "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. In reviewing the substance of the communications in question, the Court was mindful of the important rules espoused in these cases and is confident that no disclosure is required in this case. The Court sees no significant relevance or materiality which might suggest that disclosure of these privileged communications is mandated.

Finally, the defense has moved for this Court to ensure that the privileged information does not present any concerns under the jurisprudential standards established by *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny. In *Giglio*, the Supreme Court found that "evidence of any understanding or agreement as to a future prosecution would be relevant to [a witness's] credibility and the jury was entitled to know of it." 405 U.S. at 155. *Giglio* is concerned with any facts that would likely affect the judgment of a jury. *Id.* at 154. This Court can find no substance, which is legally material and/or relevant

to these defendants, within the privileged communications and is confident that *Giglio* disclosure concerns are not implicated. Any benefits received by Malone in return for his cooperation and guilty plea may be sufficiently elucidated by other evidence, including his plea agreement.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Reece's (01) Motion [Record Document 274] **insofar** as the defense moved for *in camera* inspection of these documents. In every other respect, the motion is **DENIED**. The communications at issue fall within the confines of attorney-client privilege and are not subject to disclosure under any other circumstances.

**THUS DONE AND SIGNED** this 29th day of March, 2014, in Shreveport, Louisiana.

_____
Elizabeth Erny Foote
United States District Judge